IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYNN D. STEWART,

      Plaintiff,

                                 CASE NO.: 8:04-cv-40-T-17-EAK-MAP

v.

HOOTERS OF AMERICA, INC.,

      Defendant.
_____/

## FINAL JUDGMENT

The trial of this cause was bifurcated upon stipulation of the parties. The Court bifurcated the issue of liability for Plaintiff's claim for breach of an Administrative Services Agreement (the "ASA") and Defendant's counterclaim for recoupment, from the issue of damages. The action was tried before the Court, sitting without a jury, from July 9, 2007 to July 11, 2007. On November 15, 2007, the Court issued its Memorandum Opinion setting forth its findings of fact and conclusions of law. For the reasons set forth more fully in its Memorandum Opinion, the Court denied the parties' various post-trial motions and entered judgment in favor of the Plaintiff, Lynn D. Stewart ("Mr. Stewart") as to the issue of liability on Plaintiff's breach of the ASA claim and entered judgment in favor of the Defendant, Hooters of America, Inc. ("HOA") on its counterclaim of recoupment.

Damages were referred to the Special Master with the direction to determine the following issues:

(1) Whether HOA failed to pay Mr. Stewart all monies due in accordance with the herein construed terms of the ASA, from January 9, 1998 through November 30, 2000. If Mr. Stewart has not been paid all the monies due to him under the ASA, establish the calculated amount of monies owed by HOA to Mr. Stewart. If Mr. Stewart has been paid more than all the monies due to him under the ASA, establish HOA's recoupment or setoff calculated amount;

(2) Whether HOA excluded gross sales from the following entities from its calculation: Hooters Racing, Hooters Magazine, National Golf Association, Super Sports Merchandising[,] Hooters Sports Production and Sports News. If Mr. Stewart has not been paid all the monies due to him under the definition of "Gross Sales," establish the calculated amount of monies owed by HOA to Mr. Stewart. If Mr. Stewart has been paid more than all the monies due to him under the definition of "gross sales," calculate HOA's recoupment or setoff amount; and

(3) Whether in making payments to Mr. Stewart under the ASA, HOA deducted from HOA's calculation of "Gross Sales" fees charged by credit card companies to HOA for purchased (sic.) made via credit card to buy HOA goods and services. If Mr. Stewart has not been paid all the monies due to him with regard to credit card transactions, establish the amount of monies owed by HOA to Mr. Stewart. If Mr. Stewart has been paid more than all the monies due to him with regard to the credit card transactions, establish HOA's recoupment or setoff amount.

The parties submitted a Stipulation as to Amount of, and Evidentiary Support for, Damages to the Special Master (the "Parties' Stipulation"), as well as a spreadsheet detailing dollar amounts for the individual entities prepared by HOA ("HOA's Spreadsheet"), and briefs. This Court[1] having reviewed the Parties' Stipulation adopts the Parties' accounting of damages based upon the evidentiary record cited therein, as follows:

---

[1] After the untimely death of Special Master Thomas E. Baynes, the task of answering the damages issues sadly fell to this Court.

1998:

| | |
|---|---|
| HOA's Gross Sales: | $399,491,798 |
| Less Gross Sales to Hooters Inc and Lags (recoupment deductions) | ($66,209,887) |
| Subtotal | $333,281,911 |
| Non-restaurant sales add backs (**disputed**) | $-0- |
| Prorated Gross Sales for 1998: | $323,237,798 |
| Plus Credit Card Deduction Add Backs[2] | $3,232,378 |
| Total Gross Sales: | $336,514,289 |
| Target Prorated | $290,958,904 |
| Total 1% Compensation Payable For 1998: | $455,554 |
| Compensation Actually Paid To Stewart: | $994,917 |
| Compensation Due/(Overpaid) To Stewart: | ($539,363) |

1999:

| | |
|---|---|
| HOA's Gross Sales: | $452,321,588 |
| Less Gross Sales to Hooters Inc and Lags (recoupment deductions) | ($73,601,672) |
| Subtotal | $378,719,916 |
| Non-restaurant sales add backs **(additional sums disputed)** | $3,628 |
| Plus Credit Card Deduction Add Backs | $3,787,219 |

---

[2] The Parties agreed and stipulated that the credit card deduction add backs should total 1% of the compensable restaurant gross sales.

| | |
|---|---|
| Total Gross Sales: | $382,510,743 |
| Total 1% Compensation Payable For 1999: | $825,107 |
| Compensation Actually Paid To Stewart: | $1,523,216 |
| Compensation Due/(Overpaid) To Stewart: | ($698,109) |

January 1, 2000 – Through November 30, 2000:

| | |
|---|---|
| HOA's Gross Sales | $472,990,153 |
| Less Gross Sales to Hooters Inc and Lags (recoupment deductions Jan 1 –May 30 only) | ($56,513,301) |
| Subtotal | $416,476,852 |
| Non-restaurant sales add backs (additional sums **disputed**) | $91,712 |
| Plus Credit Card Deduction Add Backs | $4,164,769 |
| Total Gross Sales: | $420,733,333 |
| Target Prorated | $275,000,000 |
| Total 1% Compensation Payable For 2000: | $1,457,333 |
| Compensation Actually Paid To Stewart: | $930,402 |
| Compensation Due/(Overpaid) To Stewart for 2000: | $526,931 |
| Total Overpaid to Stewart (1998-2000): | $710,541 |

The Parties disputed whether or not the calculation of "gross sales" under the ASA included the gross sales of HOA's related or affiliated entities which were not restaurants ("HOA's Non-Restaurant Entities"). That issue, as well as the Court's findings on the dollar amounts for the HOA's Non-Restaurant Entities, will be addressed below in the Court's discussion of the second of the three damages issues.

Considering the foregoing dollar amounts, the Court determines the damages issues, as follows:

**(1) Monies Due To Mr. Stewart Under The Court's Construction Of The ASA's Terms For January 9, 1998 Through November 30, 2000**

Because the amount of HOA's recoupment exceeds the amount of money HOA failed to pay to Mr. Stewart for the period of January 9, 1998 through November, 30, 2000, HOA does not owe Mr. Stewart any money under the Court's construction of the ASA terms.

**(2) Monies Due For HOA's Failure To Include HOA's Non-Restaurant Entities Within Its Calculation Of Payments Due Under The ASA**

HOA should have included the gross sales of its non-restaurant entities when it calculated the compensation due to Mr. Stewart during the subject time period. The ASA provides, in relevant part:

> Gross Sales, for purposes of this Paragraph and Agreement, **shall include the entire actual sales price, whether for cash or otherwise, of all sales of merchandise or services,** exclusive of sales of assets or other extraordinary events; sales, excise or similar taxes collected from customers of the Company for transmittal to taxing or other authorities; receipts from the sale of meals to employees of the Company; service charges made, collected and turned over to the employees in lieu of such employees receiving tips or gratuities from patrons; the value of charitable sales and promotional donations; trade outs; the amount of any cash or credit refund made to a customer with respect to a sale of merchandise or

> services by the Company if such sale is or has been included in the computation of gross sales; **and sales are transfers of merchandise or services between related or affiliated entities of the Company….**
>
> (ASA, at para. 4.4)(emphasis added).

HOA's contention that those revenue items generated by its Non-Restaurant Entities do not constitute "Gross Sales" because they do not constitute the sale of merchandise or services merely attempts to assert form over substance. Regardless of how HOA internally characterizes the revenue, HOA's Non-Restaurant Entities provided a service in exchange for payment.

In construing "sales of …services" under the ASA, the Court looks to the plain meaning of the words. *Reynolds Properties, Inc. v. Bickelmann*, 2009 WL 3418152, *3 (Ga. App. Oct. 15, 2009). "Generally speaking, 'service' is defined as 'the act of doing something useful for a person or company for a fee." *Dekalb County v. City of Decatur*, 287 Ga. App. 370, 373, 651 S.E.2d 774, 778 (Ga. App. 2007). Service is also defined as "an act of assistance or benefit to another or others." The American Heritage Dictionary of English Language, 1649 (3rd Ed. 1996).

Significantly, each and every one of HOA's Non-Restaurant Entities engages in an activity that is classified as a "service" by not only the Georgia Code, but the United States Patent Office (the "PTO"). For example, Section 10-1-443 (b), Georgia Code Annotated lists "education and entertainment" as "services" for purposes of registering a service mark. See § 10-1-443 (b) 8 Ga. Code Ann. Likewise, the U.S. Patent and Trademark Office has designated "education and entertainment" as services for purposes of registering a federal service mark. (www.uspto.gov/faq/trademarks.jsp, Class 41).[3]

---
[3] 15 U.S.C. section 1112 authorizes the Director of the PTO to establish a classification of goods and services.

Class 41, entertainment, expressly includes sporting activities. Two of HOA's Non-Restaurant Entities, Hooters Racing and National Golf Association ("NGA"), put on sporting events. Additionally, Section 10-1-443 (b), Georgia Code Annotated lists "advertising and business" as "services." See § 10-1-443 (b) 2, 8 Ga. Code Ann. The PTO has also designated "advertising and business" as services for purposes of registering a service mark. (www.uspto.gov/faq/trademarks.jsp, Class 35).[4] The remaining Non-Restaurant Entities, Hooters Magazine, Hooters Sports News ("HSN"), and Hooters Sports Productions ("HSP") all provide advertising services.

The Court makes the following findings of fact with regards to the individual Non-Restaurant Entities:

### NGA

HOA submitted an affidavit of its controller, James Tessmer, who attested that the NGA owns and operates a satellite tour for professional golfers. From this, the Court concludes that NGA sells golfing services that provide various useful benefits in exchange for fees paid. HOA's Spreadsheet lists the following sources of revenue for the NGA: Entry Fees, Local Qualifier Fees, Local Sponsorship, Membership Income, and "EFI, HOA, Bud additional purse."

Clearly, all of these revenue items reflected payment for golfing services and should have been included within HOA's calculation of compensation owed to Mr. Stewart under the ASA. For example, golfers who paid the Membership Fee to the NGA were provided entry into a series of professional golf events. Additionally, in exchange

---

[4] 15 U.S.C. section 1112 authorizes the Director of the PTO to establish a classification of goods and services.

for paying the Membership Fee, the NGA provided members with professional golfer membership status, free practice rounds and range fees at the events, complimentary snacks and beverages at the events, the opportunity to gain professional ranking, and a discount purchasing program. Thus, the NGA provided something "useful" or a "benefit" to their members in exchange for payment of the Membership Fees. Consequently, all monies received by NGA designated as "Membership Income" constituted "Gross Sales" that should have been included in the calculation of payments owed to Mr. Stewart for the time period of January 9, 1998 through November 30, 2000.

The Entry Fees and Local Qualifier Fees paid to NGA similarly reflect the sale of golf services in that NGA provided similar benefits to those who paid the Fees. In exchange for payment of the Entry Fees and Local Qualifier Fees, golfers were given the opportunity to play golf in a professional golf tournament. They received other benefits given to NGA's members who played in an event: the opportunity to qualify for professional ranking, playing golf at a private club, and the chance to win monetary prizes. The Entry Fees and Local Qualifier Fees therefore also constitute a "sale of services" that should be added to Mr. Stewart's 1% Compensation calculation.

NGA also sold sponsorships for the golf events. "Sponsorship" is defined as "[o]ne that finances a project or an event carried out by another person or group, especially a business enterprise that pays for radio or television programming in return for advertising time." The American Heritage Dictionary of English Language 1741 (3d Ed. 1996). NGA's sponsorship fees represent payment in exchange for the opportunity to advertise or promote one's company, products, or services at the golf event. Sponsors

8

also received other promotional opportunities, invitations to play in certain golf events, and merchandise in exchange for the payment of the sponsorship fee. All of NGA's sponsorship packages provided promotional services and should have been included within Mr. Stewart's compensation calculation.

The Court notes on HOA's Spreadsheet certain entries designated "EFI, HOA, Bud additional purse." To the extent that promotional services were given in exchange for the "EFI, HOA, Bud additional purse," then those monies as well should have been added by HOA to the compensation calculation. HOA's contention that these monies were used to "defray costs" is irrelevant. For example, sales of restaurant food were properly included, although they are also obviously used to defray a restaurant's operating expenses.

USAR

USAR (formerly known as Hooters Racing) owns and operates a motor car racing circuit. (Tessmer Aff. at para. 9). HOA's Spreadsheet lists the following categories of revenue which the Court finds constitutes the "sale of services": Outside Sponsors; Supplier Sponsors (Miller); EFI/Jackaroo Sponsorship; Series memberships/credentials; Outside Sponsors points; Contingency Sponsor points; Supplier Sponsors (Miller) points; Race Supplier points; Entry Fees; Front Gate Receipts; Front Gate Receipts-split; Back Gate Receipts; Back Gate Receipts-split.

Similar to the NGA, USAR's Entry Fees and Series memberships/credentials constitute the "sale of services." The USAR provides racing car drivers who pay to participate in the racing circuit or a race, the opportunity to participate in a professional

9

race, to win money, to gain experience in a full-bodied stock car, to gain entry to a larger touring series, and to gain publicity and notoriety. (www.usarprocup.com[5]). Because the USAR provides a valuable benefit to the race car members through the payment of Entry Fees and Series memberships/credentials, those fees should have been included in the compensation calculation as the "sale of services."

Likewise, the Outside Sponsors, Supplier Sponsors (Miller), EFI/Jackaroo Sponsorship, Outside Sponsor points, Contingency Sponsor points, Supplier Sponsors (Miller) points, and Race Supplier points (collectively, referred to as "USAR Sponsorships") provide the same benefits as with the NGA sponsorships: promotion and advertising of one's company, products, or services in exchange for the payment of money. HOA sought to exclude the USAR Sponsorships by arguing that some of the monies went to pay purses or points. How HOA *used* the money is irrelevant. The Court's only focus, again, is on the clear language of the ASA – not how HOA spent its money. The USAR Sponsorships clearly constitute "sales of services" and should have been included in the calculation of the 1% Compensation.

All of the Front Gate Receipts, Front Gate Receipts-split, Back Gate Receipts, and Back Gate Receipts-split (the "USAR Receipts") represent payments by spectators to watch the races. (Tessmer Aff. at para. 9). Watching a race, like other sporting events, is a form of entertainment. People purchase a ticket in exchange for a benefit – the opportunity to be entertained. Thus, the USAR Receipts reflect the "sale of services."

---

[5] Although the website printout submitted to the Court was not from 1998-2000, it is understood and believed that USAR has provided similar benefits to racers in exchange for payment of the entry fee during the relevant time period.

10

Hooters Magazine

As HOA's controller attested, Hooters Magazine published a periodic magazine which sold advertising space to non-HOA companies. (Tessmer Aff. at para. 7). The HOA Spreadsheet identifies "Ad Space" as a source of revenue for Hooters Magazine. Advertising is clearly a service that was provided by Hooters Magazine: advertisers were given the opportunity to market and promote their company, goods, and services in a printed form of communication to a target audience in exchange for the payment of money. Ad Space therefore reflected the "sale of services" which should be counted toward Mr. Stewart's compensation calculation.

HSN

HSN also produced a periodic publication that provided advertising opportunities to outside companies. For the same reasons discussed more fully above under Hooters Magazine, all of HSN's advertising sales dollars should have been included in calculating Mr. Stewart's compensation under the ASA.

HSP

HSP provided broadcasting production services for Hooter's various sporting events. The item marked "Other Sponsor (EFI, beer companies)" on HOA's Spreadsheet for HSP reflects sponsorship monies. (Tessmer Aff. at para. 10). Like the sponsorships for NGA and USAR, those monies represent the sale of promotional and advertising opportunities to outside companies – that is, the sale of a service to them. Accordingly, all sponsor monies for HSP should be included in the 1% Compensation calculation.

In consideration of the foregoing analysis, and applying the sales numbers supplied by HOA in its Spreadsheet, the Court finds that the following total sales of HOA's Non-Restaurant Entities were improperly omitted from the calculation of the "Gross Sales" for the following years:

| 1998: | 1999: | 2000: |
|---|---|---|
| $5,324,934.00 | $5,500,541.00 | $ 143,383.00 |

If these sums had been included within HOA's tabulation of the "Gross Sales," HOA would have owed additional money to Mr. Stewart as part of his 1% Compensation. However, in light of this Court's previous ruling finding in favor of HOA on its recoupment counterclaim, HOA does not owe any additional monies to Mr. Stewart.

**Monies Due To Mr. Stewart With Regards To Credit Card Transactions**

HOA previously conceded it deducted credit card fees from its calculation of the "Gross Sales" under the ASA. HOA's Spreadsheet shows that HOA owed Mr. Stewart the following amounts as additional 1% Compensation due to Mr. Stewart:

| <u>1998</u> | <u>1999</u> | <u>2000</u> |
|---|---|---|
| $22,912.47 | $37,798.32 | $41,566.50 |

However, in light of this Court's previous ruling finding in favor of HOA on its recoupment counterclaim, HOA does not owe any additional monies to Mr. Stewart. Accordingly, it is

**ORDERED AND ADJUDGED** that final judgment is entered in favor of the Plaintiff on the claim for breach of contract and that final judgment is entered in favor of the Defendant on the counterclaim of recoupment; and

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff shall take nothing of and from its breach of contract claim against Defendant, and Defendant shall take nothing of and from its recoupment counterclaim. The Clerk of Court is directed to close this case based on the entry of this judgment.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 22nd day of February, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record